UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| PAULA M. BELLMER,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant. | No. 11-CV-262-JPH<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

    BEFORE THE COURT are cross-Motions for Summary Judgment. (Ct. Rec.13, 19.) Attorney Maureen J. Rosette represents plaintiff; Special Assistant United States Attorney Daniel E. Burrows represents defendant. The parties have consented to proceed before a magistrate judge. (Ct. Rec. 7.) After reviewing the administrative record and briefs filed by the parties, the court **GRANTS** defendant's Motion for Summary Judgment and **DENIES** plaintiff's Motion for Summary Judgment.

### JURISDICTION

    Plaintiff Paula M. Bellmer (plaintiff) protectively filed for disability insurance benefits (DIB) and supplemental security income (SSI) on April 24, 2009.[1] (Tr. 153, 157, 199.) Plaintiff initially alleged an

---

[1] Plaintiff originally applied for DIB benefits, but was denied due to lack of benefits under her earning record. (Tr. 44, 70.) The DIB application which is the subject of this claim is for child's benefits based on the earnings record of plaintiff's parents. (Tr. 153.) To be entitled to child's benefits as an adult, plaintiff must establish disability before her twenty-second birthday on October 24, 2008. *See* 20 C.F.R. § 404.350(a); (Tr. 44-45).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -1

onset date of December 31, 2008, but at the hearing the alleged onset date was amended to January 1, 2008. (Tr. 44.) Benefits were denied initially and on reconsideration. (Tr. 73, 76, 84, 92.) Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before ALJ James W. Sherry on June 24, 2010. (Tr. 42-65.) Plaintiff was represented by counsel and testified at the hearing. (Tr.46-57, 64.)Vocational expert Daniel McKinney also testified. (Tr. 32-54, 66-72.) The ALJ denied benefits (Tr. 18-29) and the Appeals Council denied review. (Tr. 1.) The matter is now before this court pursuant to 42 U.S.C. § 405(g).

**STATEMENT OF FACTS**

The facts of the case are set forth in the administrative hearing transcripts, the ALJ's decision, and the briefs of plaintiff and the Commissioner, and will therefore only be summarized here.

Plaintiff was 23 years old at the time of the hearing. (Tr. 46.) She dropped out of school halfway through her senior year but later completed a GED. (Tr. 47.) Her work experience includes a part-time job at Salvation Army. (Tr. 48.) She left that job because she could not handle the stress and had panic attacks almost every day at work. (Tr. 49.) She has had panic attacks at the bus plaza and at stores. (Tr. 50.) Her panic attacks can last from 10 to 20 minutes or sometimes longer. (Tr. 50-51.) She does not leave the house often, she mostly stays at home. (Tr. 52, 54.) Plaintiff testified she has difficulties with sleep and feels tired. (Tr. 53.) She has irritable bowel syndrome. (Tr. 55.) She experiences diarrhea, constipation and severe abdominal pain. (Tr. 55.) It did not affect her work at the Salvation Army too badly, but she needs to use the bathroom five to seven times per day for 15 to 30 minutes. (Tr. 56.) Her medication helps with pain but not with diarrhea. (Tr. 56.) Plaintiff testified her memory is slow and she cannot focus. (Tr. 56.) She also has anemia which makes her fatigued and affects her energy level. (Tr. 64.)

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler,* 760 F. 2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F. 3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are

supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan,* 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze,* 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Services,* 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

## SEQUENTIAL PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423 (d)(1)(A), 1382c (a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if his impairments are of such severity that plaintiff is not only unable to do his previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and

vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he or she is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he or she has performed in the past. If plaintiff is able to perform his or her previous work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity ("RFC") assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in view of his or her residual functional capacity and age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his or her previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -4

activity and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

### ALJ'S FINDINGS

At step one of the sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since January 1, 2008, the amended alleged onset date. (Tr. 20.) At step two, the ALJ found plaintiff has the following medically determinable impairments: major depressive disorder, recurrent, severe, without psychotic features; panic disorder with agoraphobia; and personality disorder, not otherwise specified, paranoid features. (Tr. 21.) At step three, the ALJ found plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 22.) The ALJ then determined plaintiff had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> [C]laimant is limited to simple, routine and repetitive tasks. The claimant can complete some well-learned detailed tasks. The claimant should work in a low stress job involving occasional decision-making, occasional changes in the work setting and no fast-paced production requirements. The claimant would be capable of only occasional and superficial interaction with the general public and coworkers. The claimant can have occasional interaction with supervisors.

(Tr. 23.) At step four, the ALJ found plaintiff has no past relevant work (Tr. 27.) After considering plaintiff's age, education, work experience, residual functional capacity, and the testimony of a vocational expert, the ALJ determined there are jobs that exist in significant numbers in the national economy that plaintiff can perform. (Tr. 28.) Thus, the ALJ concluded plaintiff has not been under a disability as defined in the Social Security Act from January 1, 2008, through the date of the decision. (Tr. 29.)

### ISSUES

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Specifically, plaintiff asserts: (1) the ALJ did not properly consider or reject the opinions of treating and examining sources regarding psychological impairments and limitations; and (2) the ALJ did not properly consider or reject plaintiff's testimony regarding symptoms. (ECF No. 14 at 8-17.) Defendant argues substantial evidence supports the ALJ's decision and the ALJ: (1) properly weighed the opinion evidence; and (2) properly determined plaintiff was not entirely credible. (ECF No. 20 at 8-19.)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -5

# DISCUSSION

**1.     Credibility**

Plaintiff argues the ALJ did not properly consider or reject her testimony. (ECF No. 14 at 16.) In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 416.929.

Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of the symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). If there is evidence of a medically determinable impairment likely to cause an alleged symptom and there is no evidence of malingering, the ALJ must provide specific and cogent reasons for rejecting a claimant's subjective complaints. *Id.* at 346. The ALJ may not discredit pain testimony merely because a claimant's reported degree of pain is unsupported by objective medical findings. *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). The following factors may also be considered: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) claimant's daily living activities; (4) claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Morgan v. Apfel*, 169 F.3d 595, 601-02 (9th Cir. 1999). In the absence of affirmative evidence of malingering, the ALJ's reasons must be "clear and convincing." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038-39 (9th Cir. 2007); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *Morgan*, 169 F.3d at 599. The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)(citation omitted).

1    Plaintiff's sole argument regarding credibility is "the ALJ did not specifically state why he
2 disbelieves Ms. Bellmer's testimony regarding the number of panic attacks she experienced was not
3 credible and what facts in the record led to that conclusion." (ECF No. 14 at 16.) Therefore, plaintiff
4 asserts her testimony should be credited. (ECF No. 14 at 16.) Plaintiff's argument is rejected. The
5 ALJ cited a number of specific reasons supported by citations to the record in rejecting plaintiff's
6 testimony. (Tr. 24-27.)

7    The ALJ found plaintiff's subjective complaints are not reasonably consistent with the
8 medical evidence. (Tr. 24.) While subjective pain testimony may not be rejected solely because it is
9 not corroborated by objective medical findings, the medical evidence is a relevant factor in
10 determining the severity of a claimant's pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d
11 853, 857 (9th Cir. 2001); 20 C.F.R. § 416.929(c)(2)**.** The ALJ cited several instances in the record
12 supporting this conclusion. (Tr. 24.) The ALJ also noted some improvement in plaintiff's condition is
13 supported by the record. (Tr. 24.) One strong indication of the credibility of an individual's statements
14 is their consistency, both internally and with other information in the case record. The ALJ must
15 consider such factors as the degree to which the individual's statements are consistent with the
16 medical signs and laboratory findings and other information provided by medical sources, including
17 information about medical history and treatment. S.S.R. 96-7p. The ALJ pointed to several specific
18 inconsistencies in the record suggesting plaintiff's anxiety may have improved. (Tr. 24.) The ALJ
19 pointed out plaintiff's daily activities are inconsistent with the nature and severity of plaintiff's
20 subjective complaints. (Tr. 25.) It is reasonable for an ALJ to consider a claimant's activities which
21 undermine claims of totally disabling pain in making the credibility determination. *See Rollins*, 261
22 F.3d at 857. The ALJ discussed evidence of plaintiff's daily activities and cited evidence supporting
23 the conclusion. Further, the ALJ cited evidence suggesting plaintiff may be motivated by secondary
24 gain and noted additional instances where the evidence undermines plaintiff's credibility throughout
25 the discussion of the medical evidence. (Tr. 25-27.)

26    Plaintiff's argument utterly fails to address any of the reasons or evidence cited by the ALJ in
27 support of the credibility determination. The court concludes the reasons cited by the ALJ are clear
28 and convincing reasons supported by substantial evidence in the record. As a result, the ALJ did not

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -7

err in determining plaintiff is less than fully credible.

**2.      Opinion Evidence**

Plaintiff argues the ALJ did not properly consider or reject opinions of plaintiff's treating and examining providers. (ECF NO. 14 at 9-15.) In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding a treating or examining physician's opinion. *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995); *Fair*, 885 F.2d at 604.

If a treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). However, if contradicted, the ALJ may reject the opinion if he states specific, legitimate reasons that are supported by substantial evidence. *See Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989).

   **a.      Dr. Mabee**

Plaintiff argues the ALJ did not set forth the required specific and legitimate reasons supported by substantial evidence in rejecting Dr. Mabee's opinion. (ECF No. 14 at 12.) In February 2009, Dr. Mabee completed a psychological evaluation. (Tr. 220.) He diagnosed major depressive disorder, recurrent, severe without psychotic features; panic disorder with agoraphobia; and personality disorder, NOS with paranoid features. (Tr. 224.) He opined her most prominent difficulties are a combination of her anxiety and depression. (Tr. 224.) Dr. Mabee assessed a GAF score of 50-55, suggesting plaintiff is

having moderate to significant difficulties functioning on a daily basis, moderate to significant difficulties interacting appropriately and meaningfully with others, and moderate to significant difficulties functioning in a typical work environment.[2] (Tr. 224-25.) Cognitively, Dr. Mabee indicated plaintiff should be able to understand and follow simple verbal and written instructions, and she would not be likely to have more difficulties with more complex instructions unless she is experiencing anxiety. (Tr. 225.) He assessed pace of performance and persistence as average. (Tr. 225.) The ability to reason and use appropriate judgment in most aspects of life was assessed to be below average. (Tr. 225.) Dr. Mabee noted it was likely plaintiff will call in sick often or quit due to her belief that others are talking about her or trying to harm her. (Tr. 225.) He opined she would be somewhat limited in her capacity to work due to panic tasks because she will be unable to continue with a task in the event of a panic attack. (Tr. 225.)

The ALJ gave significant weight to Dr. Mabee's assessment. (Tr. 26.) The ALJ concluded Dr. Mabee's assessment revealed few limitations, with the ALJ found to be consistent with the record and the state reviewing evaluations. (Tr. 26.) The ALJ noted psychological limitations associated with social functioning are included in the RFC. (Tr. 26.) However, the ALJ found Dr. Mabee's GAF assessment of moderate to significant difficulties in functioning is unsupported by plaintiff daily activities and therefore rejected that portion of Dr. Mabee's opinion. (Tr. 26.)

Without citing the record, plaintiff asserts "Dr. Mabee stated that [plaintiff] does have significant difficulties functioning on a daily basis." (ECF No. 14 at 10.) This is not an accurate representation of the record. Dr. Mabee actually stated plaintiff "is having moderate to significant difficulties functioning on a daily basis." (Tr. 224.) "Moderate to significant" difficulties are less than "significant difficulties."

Plaintiff argues her ability to care for herself and her household were more limited than the ALJ's conclusions reflect. (ECF No. 14 at 10.) The ALJ cited plaintiff's ability to care for her young child, complete household chores, complete personal care unassisted and maintain social contact with family

---

[2] A GAF score of 41-50 indicates serious symptoms or any serious impairment in social, occupation, or school functioning. A GAF score of 51-60 indicates moderate symptoms or any moderate impairment in social, occupational or school functioning. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 4TH Ed. at 32.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -9

and friends as undermining Dr. Mabee's GAF assessment of "moderate to significant difficulties." Without citing the record, plaintiff argues her "social network" consisted of her father and one friend. (ECF No. 14 at 10.) The ALJ acknowledged plaintiff's report that her support system included only her father and a friend (Tr. 22, 225), but pointed out plaintiff also reported making friends at work and visiting friends or relatives two to three times per week. (Tr. 22, 265-66, 362.) Further, the ALJ included social limitations in the RFC: "The claimant would be capable of only occasional and superficial interaction with the general public and coworkers. The claimant can have occasional interaction with supervisors." (Tr. 23.)

Plaintiff also suggests the record does not support the ALJ's conclusion that plaintiff's ability to maintain her household without assistance is inconsistent with the GAF score assessed by Dr. Mabee. (ECF No. 14 at 10-11.) The ALJ pointed out plaintiff told Dr. Mabee she was capable of completing household chores, including washing dishes, dusting, sweeping and washing clothes. (Tr. 22., 362.) She told Dr. Pollack she spent her day watching television, caring for her child and making meals. (Tr. 222.) Plaintiff cites a September 25, 2009 counseling record noting plaintiff reported struggling to stay motivated to keep up with housework (Tr. 252, 353.) However, by December 2009, plaintiff reported she was more stable and able to cope with her anxiety with regular counseling appointments. (Tr. 350.) Similarly, plaintiff points to a February 5, 2010 report by plaintiff that she was struggling with motivation to clean house daily .(Tr. 353.) By the end of that month, plaintiff reported improvement with housework. (Tr. 354.) Even if there is some evidence the plaintiff was not motivated to do housework for periods of time, it was not unreasonable for the ALJ to find that plaintiff's ability to maintain her home by herself suggests a level of functionality higher than the GAF score assessed by Dr. Mabee reflects. [3]

The last evidence cited by plaintiff in support of the GAF score assessed by Dr. Mabee is the note of Mariza Anderson, MSW, who wrote on January 2009 that plaintiff's symptoms of panic attacks, depressed mood, poor appetite, low energy and irritability had increased in the past few months. (ECF

---

[3] It is noted by the court that a lack of motivation to do housework is not particularly persuasive evidence of disability. The court suspects many in the non-disabled population also find it difficult to stay motivated to keep up with housework.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -10

No. 14 at 11, Tr. 260.) Plaintiff's argument is unclear and undeveloped. The ALJ provided well-supported reasons for rejecting Ms. Anderson's opinion, discussed *supra*. Further, the ALJ included social limitations in the RFC reflecting at least some of the limitations perhaps suggested by Ms. Anderson's statement. However, Ms. Anderson's statement is not particularly relevant to the GAF score assessed by Dr. Mabee and does not suggest the ALJ erred.

Lastly, even if the ALJ erred in rejecting Dr. Mabee's GAF assessment, the error is harmless.[4] Clinicians use a GAF to rate the psychological, social, and occupational functioning of a patient. The scale does not evaluate impairments caused by psychological or environmental factors. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 598 (9th Cir. 1999). The Commissioner has explicitly disavowed use of GAF scores as indicators of disability. "The GAF scale . . . does not have a direct correlation to the severity requirements in our mental disorder listing." 65 Fed. Reg. 50746-01, 50765 (August 21, 2000). As such, even if Dr. Mabee's GAF assessment is credited, there is no correlation to the RFC or plaintiff's limitations. Further, as defendant points out, "it is not even clear that a GAF score counts as the type of opinion that an ALJ must address and explain his rejection of." (ECF No. 20 at 12.) The GAF score is not an indicator of any particular limitation or an evaluation of the effect of an impairment, so its relevance is limited.

Plaintiff argues the ALJ did not provide specific, legitimate reasons for rejecting Dr. Mabee's opinion. (ECF No. 14 at 12.) However, the ALJ did not reject the opinion; rather, the ALJ gave significant weight to most of Dr. Mabee's opinion. The ALJ rejected the GAF score assessed by Dr. Mabee, but gave a specific, legitimate reason supported by substantial evidence for doing so. Even if the GAF was improperly rejected, the GAF score is of limited relevance in assessing plaintiff's disability.

**b.   Mariza Anderson, MSW**

Plaintiff argues the ALJ did not properly reject Ms. Anderson's opinion. (ECF No. 14 at 12-13.) In January 2009, Ms. Anderson, plaintiff's treating counselor, wrote a letter to the Department of Social and Health services to provide information in support of plaintiff's application for disability. (Tr. 260.)

---

[4] *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990); *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380 (9th Cir. 1984).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -11

Ms. Anderson listed plaintiff's diagnoses, including major depressive disorder, recurrent, severe, without psychotic features; and panic disorder with agoraphobia. (Tr. 260.) Ms. Anderson indicated plaintiff's symptoms of panic attacks, depressed mood, poor appetite, low energy and irritability had increased over the past few months. (Tr. 260.)

The ALJ gave little weight to Ms. Anderson's opinion. (Tr. 26.) As a social worker and counselor, Ms. Anderson is an "other source."[5] The opinion of an acceptable medical source is given more weight than that of an "other source." 20 C.F.R. §§ 404.1527, 416.927; *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996). However, the ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). Non-medical testimony can never establish a diagnosis or disability absent corroborating competent medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). Pursuant to *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir. 1993), an ALJ is obligated to give reasons germane to "other source" testimony before discounting it.

The ALJ gave two reasons for assigning less weight to Ms. Anderson's opinion. (Tr. 26.) First, the ALJ observed Ms. Anderson did not provide any supporting information to validate her findings that plaintiff would have problems coping with work. (Tr. 26.) The ALJ pointed out that Ms. Anderson's opinion is presumably based on plaintiff's subjective reporting of her symptoms while trying to qualify for benefits. (Tr. 26.) An opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Fair*, 885 F.2d at 604. In arguing this is not a germane reason for rejecting Ms. Anderson's opinion, plaintiff states, "In her treatment notes, as noted above, Ms. Bellmer had several panic attacks while at work and had to leave her work station while having the panic attacks." (ECF No. 14 at 12.) Plaintiff's mention of panic attacks and vague reference to "treatment notes" does not support the argument that the ALJ's reasoning is not germane or unsupported by the evidence. Reports of panic attacks by plaintiff recorded in Ms. Anderson's notes are simply a recitation of plaintiff's complaints which have been found by the ALJ to

---

[5]"Other sources" include nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -12

be not credible. This is not supporting information validating Ms. Anderson's findings and the ALJ reasonably construed the evidence.

Second, the ALJ gave less weight to Ms. Anderson's opinion because Ms. Anderson did not list any specific limitations or restrictions that would serve as barriers to working. (Tr. 26.) Plaintiff cites the list of symptoms mentioned in Ms. Anderson's note, but fails to acknowledge the ALJ's point that symptoms are not equivalent to limitations. In considering the opinion of an "other source," the ALJ is directed to consider how the impairment affects a claimant's ability to work. *See Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). Ms. Anderson's statement lists symptoms but contains no opinion as to how plaintiff's ability to work is limited. Indeed, Ms. Anderson's letter only expresses plaintiff's own concern about being able to cope with school or work. (Tr. 260.) Thus, Ms. Anderson's letter was reasonably perceived by the ALJ as providing little help in developing an RFC reflecting plaintiff's limitations. This is a reason germane to the source for rejecting the opinion and is supported by substantial evidence.

Lastly, the ALJ pointed out that as an other source, Ms. Anderson's opinion is entitled to less weight. To the extent the ALJ considered Ms. Anderson's status as an "other source" a "reason" for rejecting the opinion, the ALJ erred. However, the plain reading of the ALJ's opinion reflects the ALJ properly assigned less weight to the opinion because it is not the opinion of an acceptable medical source. (Tr. 26.) Based on the foregoing, the ALJ provided legally sufficient and germane reasons for assigning less weight to Ms. Anderson's opinion.

### c. Dr. Pollack

Plaintiff argues the ALJ did not properly consider or reject the opinion of Dr. Pollack, an examining psychologist. (ECF No. 14 at 15.) Dr. Pollack completed a psychological assessment and a Mental Medical Source Statement form in June 2010. (Tr. 360-69.) He diagnosed panic disorder with agoraphobia; major depression; and personality disorder with borderline and dependent traits. (Tr. 365.) Dr. Pollack opined plaintiff has marked limitations in three functional areas: the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -13

perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 367.) He also assessed three moderate limitations. (Tr. 367-68.) The vocational expert testified a person with those limitations would not be able to maintain competitive employment. (Tr. 62-63.)

The ALJ gave little weight to Dr. Pollack's opinion for several reasons. (Tr. 27.) First, the ALJ found the marked limitations assessed by Dr. Pollack unsupported by his own examination and by the record as a whole. (Tr. 27.) A medical opinion may be rejected by the ALJ if it is conclusory, contains inconsistencies, or is inadequately supported. *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Thomas*, 278 F.3d at 957. The ALJ pointed out plaintiff's ability to care for her child and home discussed *supra* contradict marked limitations. (Tr. 27.) The ALJ also noted Dr. Pollack did not submit any supporting explanations or documents showing how he arrived at his conclusions. (Tr. 27.) Although Dr. Pollack submitted a narrative report, the ALJ reasonably perceived there are no statements in the narrative linking the findings to the assessed limitations. (Tr. 364-69.) The ALJ reasonably concluded, therefore, the limitations assessed must be based on plaintiff's subjective complaints which have been discredited. (Tr. 27.) *See Tonapetyan*, 242 F.3d at 1149. These are specific, legitimate reasons for rejecting Dr. Pollack's opinion.

The ALJ also pointed out Dr. Pollack determined some of plaintiff's test scores were invalid and may reflect an exaggeration of symptoms. (Tr. 27.) However, Dr. Pollack went on to assess plaintiff based on acceptance of the scores as accurate, which the ALJ concluded undermined the validity of the deficits identified by Dr. Pollack. (Tr. 27.) Dr. Pollack qualified his conclusory comments by stating, "If one were to accept her [personality test] scores as being accurate . . ." before listing a number of characteristics revealed by the testing. (Tr. 364.) Plaintiff argues Dr. Pollack did not diagnose malingering despite the evidence exaggeration of symptoms (ECF No. 14 at 15.) The lack of a diagnosis of malingering does not make invalid test results valid, nor does it undermine the ALJ's conclusion that Dr. Pollack assessed limitations in part based on invalid test results. The ALJ's findings are based on substantial evidence and the ALJ did not err by rejecting Dr. Pollack's opinion.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this court concludes the ALJ's decision is

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -14

supported by substantial evidence and is not based on error.

Accordingly,

**IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment **(ECF No. 19)** is **GRANTED.**

2. Plaintiff's Motion for Summary Judgment **(ECF No. 13)** is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for plaintiff and defendant. Judgment shall be entered for defendant and the file shall be **CLOSED**.

DATED January 16, 2012

S/ JAMES P. HUTTON
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -15